## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

CALVIN L. REDD                                    CASE NO. 3:19-CV-00162 SEC P.

VERSUS                                              JUDGE TERRY A. DOUGHTY

VICKY REEVE                                       MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), are the following motions:  1) motion for partial summary judgment (styled as a "Motion in Opposition for Partial Summary judgment") [doc. # 28] filed by plaintiff pro se Calvin Redd; 2) motion for summary judgment [doc. # 30] filed by defendant Vickie Reeves; and 3) motion for appointment of counsel [doc. # 37] filed by plaintiff pro se Calvin Reed.  For reasons detailed below, it is recommended that plaintiff's motion for partial summary judgment be DENIED, and that defendant's motion be GRANTED-IN-PART, DISMISSING plaintiff's claims, without prejudice on the merits, but DISMISSING them with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.  It is further ordered that plaintiff's motion for appointment of counsel is DENIED.

### Procedural History

On February 7, 2019, Calvin Redd, an inmate, who, during the relevant period, was housed at the Lincoln Parish Detention Center ("LPDC"),[1] filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against facility nurse Vickie Reeves (incorrectly sued as "Vicky Reeve") because he purportedly did not receive the proper dosage of prescribed Motrin

---

[1] Redd later was transferred to David Wade Correctional Center.

or a soft food diet in the wake of a fractured left jaw that he suffered at the facility.  In response to court orders, plaintiff was required to re-file his complaint on a proper form, and then to amend his complaint to detail his claims.  [doc. #s 3 & 8].  He so complied on February 22 and April 9, 2019.  [doc. #s 4 & 9, respectively].

Pursuant to his original and amended complaints, Redd alleged that on January 29, 2019, he slipped and fell while attempting to climb into his bed.  [doc. #s 1, pg. 1; 4, pg. 3]. Thereafter, he was treated at "Lincoln General" either the next day or on "01/02/19," and was diagnosed with a fractured left jaw.  [doc. #s 1, pg. 1; 9, pg. 3].  The following day, at LSU Medical Center, he received a prescription for *800* milligrams of Motrin for his "level 5 pain." [doc. # 1, pg. 2].  He further alleged, however, that Nurse Vickie Reeves never obtained the prescribed medication; rather, Reeves provided him with "the regular," brown Motrin, which contained only *150* milligrams of medication.  [doc. # 4, pg. 3].   Redd asserted that Reeves "knowingly" inflicted "great bodily pain" and acted with "medical indifference."  [doc. #s 4, pg. 3; 9, pg. 2].

Because he did not receive the proper dosage of the prescribed pain medication, Redd stated that his mouth was continuously sore, his "jaw hurt[ ]," he was in "serious," "level 5" pain, and he had difficulty eating.  [doc. # 9, pgs. 2-3].

On February 5, 2019, plaintiff underwent surgery, apparently for his fractured jaw.  *Id*. at pg. 2.  Following the surgery, a physician at LSU Medical Center prescribed plaintiff a "liquid substance" with "vitamins and nutrients," as well as a bottle of "Chlorhexidine Gluconoate[,]" an oral rinse.  *Id*. at 2.  Redd claims, however, that "the liquid meals were never provided . . ."  *Id*. Although plaintiff began receiving the prescribed dosage of Motrin on February 16, 2019, he did

2

not receive it every day, as prescribed.  *Id*.  He stopped receiving the medication altogether on March 18, 2019, but he continues to suffer from "level 5" pain.  *Id*.  Plaintiff requested $150,000.00 for his pain and suffering, punitive damages, and an injunction requiring Nurse Reeves to perform her duties in a professional manner.  *Id*. at pg. 4.

On April 25, 2019, the court completed its initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A and ordered service on defendant Vickie Reeves.  [doc. # 10].  Reeves filed her answer on July 5, 2019.  (Answer [doc. # 16]).

On July 16, 2019, plaintiff amended his complaint -- without leave of court first obtained. [doc. # 17].  In his amended pleading, he stated that on June 10, 2019, he had to undergo another surgery to remove a plate because he had developed an abscess in his jaw.  *Id*.  This caused him to suffer permanent damage in that he no longer can feel the lower left side of his face or lip.  *Id*. He attributed this development to Nurse Reeves' failure to provide him with the proper medication and liquid meals as prescribed by the doctor.  *Id*.  He also increased his request for compensatory damage from $150,000 to $500,000.  *Id*.

Following a period for discovery, Redd filed the instant motion for partial summary judgment on October 31, 2019.  [doc. # 29].  In support of his motion, he stated that defendant Vickie Reeves was negligent for failing to provide the medication, liquid meals, and nutritional supplement that the doctor ordered in a timely manner, thereby causing him to undergo a second surgery.

On November 4, 2019, defendant Reeves filed the instant motion for summary judgment seeking dismissal of plaintiff's complaint for failure:  1) to exhaust available administrative remedies prior to filing suit; and/or 2) to establish that defendant's conduct constituted deliberate

indifference.  Reeves filed her opposition to plaintiff's motion for partial summary judgment on November 25, 2019.  [doc. # 35].

Plaintiff filed neither a reply brief in support of his motion for partial summary judgment, nor an opposition to defendant's motion for summary judgment.  Moreover, the time to do so has lapsed.  *See* Notices of Motion Setting [doc. #s 29 & 31].  Therefore, defendant's motion for summary judgment is deemed unopposed.  (Notice of Motion Setting [doc. # 31]).

On January 2, 2020, plaintiff filed a motion for appointment of counsel and an associated request for permission to subpoena Dr. Andrew Thomas Meram, who apparently was the physician that ordered nursing staff to provide Redd with liquid meals and supplements.  [doc. # 37].

## Analysis

### I.    Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*  "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255.  While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, she must establish "beyond peradventure[2] all of the essential elements of the claim . . . to warrant judgment in his favor."

---

[2]  I.e., beyond doubt.

5

Case 3:19-cv-00162-TAD-KLH   Document 38   Filed 01/31/20   Page 6 of 15 PageID #: 430

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish her right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## II.  Administrative Exhaustion

a)   Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not.  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*).  **An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement**.  *Id*. (emphasis added).  Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies.  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

6

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir.2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson, supra* (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

The Supreme Court recently explained that "[u]nder § 1997e(a), the exhaustion

requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, ___ U.S. ___, 136 S.Ct. 1850, 1858 (2016).  The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id*. (citations omitted).[3]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable.  *Id*.  First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates.  *Id*.  (citation omitted).[4]  Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements.  *Id*.  Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance

---

[3]  Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact.  *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

[4]  The Supreme Court provided some examples,

> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth* 's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief."  When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross, supra* (internal citations omitted).

process through machination, misrepresentation, or intimidation." *Id*.[5]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

      b)    <u>The LPDC had an Available Administrative Remedy Procedure</u>

In his complaint, plaintiff alleged that he did not file an administrative grievance regarding the circumstances that formed the basis for this lawsuit because, according to him, the LPDC did not have an administrative grievance procedure. [doc. # 4, pg. 2].

However, the uncontroverted, competent summary judgment evidence adduced by defendant establishes that the LPDC had, at minimum, a two-step Administrative Remedy

---

[5] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

Procedure ("ARP") that was in effect during the relevant period.  (Declaration of LPDC Assistant Warden Chad Alexander and Inmate Handbook; Def. MSJ, Exhs. A & A-1).  The first step of the ARP requires the inmate to file a grievance within 90 days of the date of the alleged event in the department where the complaint arose.  *Id*.  An inmate may file the grievance on a form, which the facility will provide upon request, or through the facility's electronic kiosk system.  *Id*.  The department employee will answer the grievance within 15 days thereafter.  *Id*.

If an inmate is not satisfied with the response to his first step grievance, then the second step of the ARP is available and consists of the inmate appealing to the warden by indicating his dissatisfaction in the appropriate space on the grievance form and forwarding it to the ARP Screening Officer within five (5) days of receipt of the decision.  *Id*.  The warden will respond and notify the inmate of his or her decision within 45 days of receipt of the second step appeal. *Id*.

The ARP also purports to have a third step that entails filing suit in the "District Court for Lincoln Parish."  *Id*.  However, the undersigned is not persuaded that this step is "available" for purposes of PLRA exhaustion.  First, this step does not appear to be an administrative remedy at all; rather, it contemplates resort to judicial process.  Second, if an inmate is required to obtain a decision from the Lincoln Parish state court before filing suit in federal court, then his § 1983 suit likely will be barred by *res judicata*.

     c)    <u>Redd Failed to Exhaust Available Administrative Remedies Prior to Filing Suit</u>

In support of her motion for summary judgment, defendant adduced uncontroverted, competent summary judgment evidence to show that plaintiff submitted two grievances on February 1, 2019, regarding his failure to receive the prescribed 800 mg Motrin pill that same

morning.  (Grievances; Def. MSJ, Exhs. A3).  The assistant warden characterized these

submissions by plaintiff as two "step-one" grievances.  (Decl. of C. Alexander; MSJ, Exh. A).

The first grievance was electronically submitted by Redd at 8:44.  (Grievances; Def. MSJ, Exhs.

A3).  Suzete Bagwell responded to the initial grievance within two hours of its submission, and

Redd viewed the response at 9:59.  *Id.*

      At 10:12, i.e., thirteen minutes after reading the response to his initial grievance, Redd

electronically submitted his second grievance, which he addressed to the "warden ms. Pam"

[sic].  Given the temporal sequence of the grievances, the similar substance of each, the fact that

Redd addressed the second grievance to the "warden," and when construing all justifiable

inferences in favor of the non-movant in the summary judgment context, the court finds that

there is a genuine dispute of material fact as to whether the second grievance satisfies the second

step of the ARP.

      However, even if Redd's second grievance constituted a submission under the ARP's

second step, Redd failed to wait for the warden (or the warden's representative) to respond to his

second step grievance before filing the instant suit.  According to Redd's second grievance,

Vickie Reeves (not the warden) provided a response to plaintiff's second (i.e., step two)

grievance on February 7, 2019.  (Grievance; Def. MSJ, Exh. A3).  Moreover, Redd did not

actually receive/read the response at the electronic kiosk until February 11, 2019.  *Id.*

      Meanwhile, on February 7, 2019, the Clerk of Court received plaintiff's initial complaint

in this matter, via the U.S. Mail.  *See* doc. # 1.  Although Redd apparently post-dated his initial

complaint as February 7, 2019, it is this court's experience that the U.S. Mail does not provide

same day delivery from Ruston to Shreveport, Louisiana.  Moreover, although very faint, the

postmark on the envelope, when zoomed in, appears to read February 5.  *See* Envelope, doc. # 1.

Of course, under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on

the date that the pro se prisoner submits the pleading to prison authorities for mailing.  *Harris v.*

*Doe*, No. 18-638, 2019 WL 5739062, at *3 (N.D. Tex. Nov. 5, 2019) (collecting cases).

Therefore, here, plaintiff filed the instant suit no later than February 5, 2019, i.e., *before* the

warden's representative responded to his second-step grievance.

> The court emphasizes that administrative exhaustion contemplates **pre**-suit exhaustion:
>
> [a]bsent a valid defense to the exhaustion requirement . . . the statutory requirement enacted by Congress that administrative remedies be exhausted before the filing of suit should be imposed.  To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

*Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007).

> Redd did not respond to defendant's motion, and thus, did not invoke any of the

recognized circumstances to excuse an inmate's duty to exhaust administrative remedies.

Accordingly, the court finds that, prior to filing suit, plaintiff did not fully exhaust his claim that

defendant failed to provide him with the proper dosage of Motrin on the morning of February 1,

2019.[6]

> Finally, there is no evidence, or argument, that plaintiff filed any grievance at all as to

any other claim that forms the basis of this suit, i.e., the administration of the incorrect dosage of

Motrin after February 1, 2019, or the failure to provide him with a soft diet and dietary

---

[6] Even if he had, the administration of an incorrect dosage of medicine, even repeatedly, shows at most, negligence, and does not rise to the level of a civil rights violation.  *Boyd v. Mohammad*, 2000 WL 34532673, at *1 (5th Cir. Mar. 30, 2000) (unpubl.) (citation omitted).  In fact, in his motion for partial summary judgment, Redd characterized Nurse Reeves' actions as negligence.

supplement.

d)    Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until he

has fully exhausted the administrative remedy procedure.[7]  Dismissal is the remedy, and

although it is typically without prejudice,[8] the court is authorized to dismiss plaintiff's complaint

with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative
> remedies as required, [plaintiff] sought relief to which he was not entitled-that is,
> federal court intervention in prison affairs prior to the prison having had the
> opportunity to address the complaint within its grievance procedures. We
> therefore affirm the district court's order dismissing [plaintiff]'s action with
> prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other
grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here.  Accordingly, if plaintiff exhausts his administrative

remedies with respect to the claims raised herein, he may present these § 1983 claims again, but

may not proceed in forma pauperis to do so.[9]

Having determined that plaintiff's complaint is subject to dismissal for failure to exhaust

---

[7]  *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other
grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a) "plainly
requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than
while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential
litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the
federal courts some relief from frivolous prisoner litigation.").

[8]  *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir.
2009).

[9]  Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an
agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point, plaintiff's
delay effectively may foreclose his ability to properly exhaust available administrative remedies.

administrative remedies, the court does not reach the merits of plaintiff's claims.  This determination dooms plaintiff's motion for partial summary judgment which was limited to the merits of his claims.

## III.    Motion for Appointment of Counsel

Plaintiff asked the court to appoint counsel to represent him in this matter.  However, given the uncontroverted evidence that plaintiff failed to exhaust administrative remedies prior to suit, the appointment of counsel is neither warranted, nor likely to advance the efficient disposition of the case.

Plaintiff also asked the court to subpoena Dr. Andrew Thomas Meram, who purportedly ordered the nursing staff to provide all liquid meals and supplements.  However, whether Dr. Meram ordered liquid meals and supplements does not appear to be a material fact in dispute in this case.  Moreover, the undersigned has recommended dismissal for failure to exhaust administrative remedies, not on the merits of the complaint.  Therefore, the requested discovery is not relevant.  In any event, the discovery period closed in October 2019, and plaintiff did not provide good cause for reopening that deadline.

## <u>Conclusion</u>

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 30] filed by defendant Vickie Reeves (incorrectly sued as "Vicky Reeve") be GRANTED-IN-PART and that plaintiff, Calvin Redd's claims against said defendant be DISMISSED, without prejudice, in their entirety, on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

14

IT IS FURTHER RECOMMENDED that the cross-motions for summary judgment [doc. #s 28 & 30] otherwise be DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for appointment of counsel and associated request for a subpoena [doc. # 37] is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 31st day of January 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE